UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IFEANYI HENRY OKORO
(A#207-519-972),

                        Petitioner,

        v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

                        Respondents.

No.  1:26-cv-03373-TLN-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action through counsel and pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.        Factual and Procedural History**

Petitioner, a native and citizen of Nigeria, lawfully entered the United States on August 10, 2014 with a B-2 visa.  ECF No. 1 at 4.  He subsequently adjusted his status to a lawful permanent residence ("LPR") through marriage on January 3, 2017.  ECF No. 1 at 4.  After becoming an LPR he was convicted of attempted criminal sexual assault by force, robbery, and home invasion in the Circuit Court of Cook County, Illinois.  Id.  After serving a little over four

1

years of an eleven year sentence, petitioner was released from prison in December 2024.  Id.

Petitioner was detained by Immigration and Customs Enforcement ("ICE") officers on June 19, 2025 and served with a Notice to Appear ("NTA") charging him with being removable for having committed two aggravated felonies as well as a crime involving moral turpitude.  Id. at 4; see also ECF No. 7-2 (NTA).  During removal proceedings, petitioner applied for asylum, withholding of removal, and protection from removal under the Convention Against Torture ("CAT").  Id.  On November 24, 2025, an Immigration Judge ("IJ") denied all petitioner's requests for relief and ordered him removed to Nigeria.  ECF No. 101 (Order of the Immigration Judge).  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  That appeal remains pending.  Id.  He is currently detained at the Golden State Annex located within this judicial district.  Id.

In claim one, petitioner contends that his prolonged detention violates of the Immigration and Nationality Act ("INA), as codified at 8 U.S.C. § 1231.  ECF No. 1 at 7.  Next, petitioner asserts that his detention has become prolonged and lacks procedural protections, in violation the Fifth Amendment's Due Process Clause.  ECF No. 1 at 7-8.  By way of relief, petitioner seeks immediate release.  Id. at 8.

In their answer, Respondents assert that petitioner is mandatorily detained pursuant to 8 U.S.C. § 1226(c)(1)(B)-(C) based on his criminal convictions that constitute an aggravated felony and a crime involving moral turpitude.  ECF No. 7 at 2.  Respondents reject Petitioner's contention that he is detained pursuant to 8 U.S.C. § 1231(a) because his order of removal is not administratively final due to his pending BIA appeal.  ECF No. 7 at 10 (citing 8 U.S.C. § 1101(a)(47)(B)).  According to respondents, ICE "determined Petitioner to be a priority because he posed a public safety risk due to his convictions," yet they waited six months after he was released from state prison to detain him.  ECF No. 7 at 2.  According to respondents, there is no limit to mandatory detention pursuant to § 1226(c).  Id. at 3 (citing Jennings v. Rodriguez, 583 U.S. 281, 303 (2018)).  Respondents also point to the Supreme Court's decision in Demore v. Kim, which upheld a facial constitutional challenge to 1226(c) detention.  Id. at 3-4.

As to Petitioner's challenges, his detention pursuant to 1226(c) during his removal

2

proceedings withstands his as-applied due process challenge because "[t]here is no bright line rule that detention beyond six months is constitutionally impermissible." Id. at 7.  Under any of the legal tests developed to resolve as-applied due process challenges, respondents contend that petitioner's detention remains constitutional.  Id. at 7-8.  However, Respondents argument that Petitioner has been in immigration custody since November 12, 2025 does not accurately reflect the record in this case.  Compare ECF No. 7 at 7 with ECF No. 7-1 at 2 (indicating ICE apprehension on June 19, 2025).  To the extent that petitioner's § 2241 application is granted, Respondents indicate that he is only entitled to a bond hearing and not release from detention.  Id. at 8-9.  Moreover, Respondents suggest that at any bond hearing, the government should not bear the burden of demonstrating flight risk or danger nor be subject to a clear-and-convincing-evidence standard at such a hearing.  Id. at 9.

Petitioner did not file a reply and the time to do so has expired.

**II.      Statutory Immigration Standards**

According to Respondents, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).  That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses and national security, § 1226(c)(1)(A)-(E), which includes any offense covered in section 1227(a)(2)(A)(iii).  It further specifies that the Attorney General "may release" such a noncitizen "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2).  Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).

Petitioner was charged with being removable pursuant to 8 U.S.C. 1227(a)(2)(A)(i), (iii) based on his convictions for attempted criminal sexual assault by force and robbery in violation of 720 Illinois Compiled Statutes 5/11-1.20 and 5/18-1, respectively.  See ECF No. 8-1 at 23-24.  Petitioner, who is represented by counsel, does not challenge the designation of his criminal convictions as either an aggravated felony or a crime involving moral turpitude.  This issue is not

////

////

3

disputed between the parties.[1]  Thus, based on these convictions, the undersigned concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(c).

### III.    Due Process Analysis

Petitioner's second claim raises an as-applied, due process challenge to the constitutionality of his mandatory detention.  At this point, petitioner has been detained for almost one year.  There is no record of any bond hearing before an IJ to determine whether his detention is justified based on his dangerousness or flight risk.

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510, 531 (2003).  The Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  Id. at 513, 529 n.12, 530.  Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  Demore, 538 U.S. at 532 (Kennedy, J., concurring).  Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to

---

[1]  To the extent that Respondents' suggest in their answer that Petitioner may request a Joseph hearing in immigration court to challenge the mandatory nature of his detention, the undersigned concludes that this is not necessary for Petitioner to exhaust his administrative remedies.  See ECF No. 7 at 4.  The remedy in a Joseph hearing is a finding that the noncitizen is not "subject to" 8 U.S.C. § 1226(c).  See Joseph, 22 I. & N. Dec. 799, 804.  But petitioner has not contested the argument that § 1226(c) applies.  Instead, he challenges the constitutionality of his ongoing detention without procedural protections.  In sum, a Joseph hearing would not provide Petitioner with the relief he seeks through his § 2241 petition.  See Arnold v. Crawford, 554 F. Supp. 2d 987, 989 (D. Ariz. 2008) ("the Court finds that exhaustion via a Joseph hearing is not required because Petitioner is not challenging whether he is subject to mandatory detention."), order vacated on reconsideration on other grounds, No. CV 07-170 PHX JAT(LOA), 2008 WL 4999211 (D. Ariz. Nov. 21, 2008).  For this reason, the undersigned finds that prudential exhaustion of administrative remedies is not required in this case.

applications of the statute as we have now read it." Preap, 586 U.S. at 420.

The Ninth Circuit Court of Appeal has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024). However, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Other federal appellate courts have also concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds this authority persuasive and agrees that Demore does not bar an as-applied challenge to prolonged detention without a hearing to determine whether such detention is justified. The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process argument.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by district courts within the Ninth Circuit, and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate

5

test for due process challenges to prolonged detention under § 1226(c).  The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the factors identified by federal courts when deciding whether detention under § 1226(c) has become unreasonably prolonged.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### IV.    Mathews Factors

#### A.  Private Interest

An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged.  See German Santos v. Warden Pike Cty. Correctional Facility, 965 F.3d 203, 211 (3d Cir. 2020); Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021).  While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  Indeed, other courts within this Circuit have found due process violations where the length of mandatory detention without bond was similar to the length of detention at issue here.  See, e.g., Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention.  See Lopez, 631 F. Supp. 3d at 880–81 (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing).  Petitioner's BIA appeal has been pending for almost six months and

neither party has indicated the average length of time it takes for an appeal to be resolved. See ECF No. 7-5 (EOIR Automated Case Information). Even this decision is not the final step in removal proceedings. Either party may choose to seek review by the Ninth Circuit Court of Appeals. Therefore, based on its duration to date without bond and the likelihood of continued mandatory detention during all these removal proceedings, the undersigned finds petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

## B.   Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor firmly favors petitioner for several reasons. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds). "In the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)). Accordingly, the second Mathews factor also weighs in favor of petitioner.

## C.   Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515). Courts have also recognized that the detention of noncitizens during removal proceedings can also serve the legitimate government purpose of preventing flight. Prieto-Romero, 534 F.3d at 1065 (citing Demore, 538 U.S. at 528). Thus, in some general way, the government has an interest in the

7

detention of non-citizens held under § 1226(c).  However, "the additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests.  At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees."  Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)).  In Petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is a legally cognizable interest under Mathews.  But Respondents' interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing.  See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

**V.      Remedy**

For reasons explained above in the Mathews analysis, the undersigned finds that the appropriate remedy in this case is a bond hearing where the government has the burden of demonstrating by clear and convincing evidence that Petitioner presents a risk of flight or danger. See Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases); Singh v. Chestnut, No. 1:26-cv-00127 DC SCR (HC), 2026 WL 766567 (E.D. Cal. March 18, 2026) (adopting Findings and Recommendations and granting a bond hearing); see also Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . . by clear and convincing evidence.").

Accordingly, IT IS FURTHER RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be ordered to provide Petitioner with a bond hearing before an

8

immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days from any order resolving the § 2241 petition.

3. Respondents be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If Petitioner is granted release on bond, Respondents shall return all of Petitioner's documents and possessions at the time of release.

5. The final order in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. Judgement be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 2, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE