UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

IFEANYI HENRY O.,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-03373-TLN-SCR

A# 207-519-972

**ORDER**

This matter is before the Court on Petitioner Ifeanyi Henry O.'s[1] Motion to Enforce Judgment. (ECF No. 13.) Respondents filed a response. (ECF No. 19.) For the reasons set forth below, the motion is DENIED.

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court incorporates in full the factual background set forth in the U.S. Magistrate Judge's June 3, 2026 Findings and Recommendations (ECF No. 8), which were adopted on June 12, 2026 (ECF No. 10). In its June 12, 2026 Order, the Court enjoined and restrained Respondents from continuing to detain Petitioner for more than seven days without providing "a bond hearing before a neutral adjudicator at which the government bears the burden of justifying Petitioner's continued detention by establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a flight risk." (ECF No. 10 at 2.)

On June 21, 2026, Respondents certified to the Court this hearing had taken place. (ECF No. 12.) Petitioner filed the instant Motion to Enforce Judgment on July 15, 2026. (ECF No. 13.) Respondents filed a response on July 31, 2026.[2] (ECF No. 19.)

## II. STANDARD OF LAW

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30,

---

[2] On July 31, Respondents requested an extension of time to file their response, which the Court granted until August 3, 2026. (ECF Nos. 17, 18.) However, they did so only after the expiration of the deadline set by the Court in its July 23, 2026 Minute Order, which required a response within three court days (that is, by July 28, 2026). (ECF No. 14.) The Court accepts counsel's representation that "[t]he previous counsel of record is no longer on assignment at the USAO" (ECF No. 17) and exercises its authority pursuant to Local Rule 230(c) to accept the late filing. E.D. Cal. L.R. 230(c) ("A failure to file a timely opposition *may* also be construed by the Court as a non-opposition to the motion.") (emphasis added). Nevertheless, the Court cautions that delays of this type, whether caused by personnel turnover in the United States Attorney's Office or otherwise, are not acceptable, particularly when they result in the delayed adjudication of cases involving challenges to the legal authority for government detention. "A pattern of unchecked and unaddressed mistakes in complying with court orders will be viewed as a deliberate and strategic choice. Future failures of this nature — whether attributed to the individual or to systemic conditions — may result in sanctions." *Eblis Alexander Y.T. v. Warden of California City Corr. Ctr.*, No. 2:26-CV-00900-TLN-AC, 2026 WL 1192547 (E.D. Cal. May 1, 2026 at *1).

2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

To prevail on a motion to enforce an injunction, "[t]he moving party has the burden of showing by clear and convincing evidence that the enjoined party violated a 'specific and definite order of the court.'" *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-CV-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)). If Petitioner received all relief required by the Court's prior judgment, the motion to enforce should be denied. *Heartland Hosp.*, 328 F. Supp. 2d at 11. But if Petitioner demonstrates Respondents "ha[ve] not complied with a judgment entered against [them], even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted. *Id.*

As constitutional challenges to immigration judge ("IJ") detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024). Under an abuse of discretion standard, the Court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

## III. Analysis

Petitioner argues the IJ's ruling denying bond failed to comply with the Court's Order because it "was treated as an ordinary custody redetermination hearing rather than one governed by the standards established in this Court's Judgment" and "the Government did not carry the burden imposed by this Court." (ECF No. 13 at 2.) He argues Respondents failed to meet their burden because they "relied primarily on Petitioner's past criminal convictions and immigration history without demonstrating why continued detention remained . . . necessary" and that Respondents' delay in re-detaining him after his release from criminal custody "undermines any

claim that Petitioner presents an immediate danger." (*Id.* at 3.)

Respondents oppose on the grounds that they complied with the Court's Order and demonstrated to the immigration court that Petitioner is a danger to the community and a flight risk by clear and convincing evidence because of Petitioner's criminal convictions for sexual assault, aggravated kidnapping, and robbery, and his lack of a sponsor in the United States, employment, or fixed address. (ECF No. 19 at 1.) Respondents argue that the IJ "rationally found" that Petitioner was a danger and flight risk because of the "brutal nature" of his criminal convictions, and his lack of sufficient community ties to ensure his appearance at future hearings. (*Id.* at 2.)

"To determine whether a[ noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez*, 124 F.4th at 784 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The non-exhaustive factors include: fixed address in the United States; length of residence; family ties and their connection to available immigration relief; employment history; record of appearance in court; criminal record "including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses"; history of immigration violations; attempts to flee; and manner of entry to the United States. *Id.*

At the bond hearing, the IJ heard argument from Respondents' and Petitioner's counsel. The IJ initially stated, incorrectly, that Petitioner had the burden of proof. (ECF No. 20.) Respondents' counsel, however, corrected this misstatement and reminded him the Court's Order mandated that Respondents carry the burden to demonstrate flight risk or dangerousness by clear and convincing evidence. (*Id.*) Respondents' counsel proceeded to argue, based on the *Guerra* factors, that Petitioner was a danger to the community due to his criminal convictions for robbery, sexual assault, and kidnapping. (*Id.*) Respondents' counsel described the factual circumstances of the crimes in some "graphic" detail (ECF No. 19 at 1), including the use of force against the victim:

> [Petitioner] took the victim by surprise, grabbed her from behind . . . . She told him no and he became aggressive and he pushed her onto the sofa . . . he moved her legs, climbed on top of her, he held her down, used her legs to try to move her legs open. She was flailing and yelling, trying to move her body away from the [Petitioner] who

> then ripped her dress and scratched her chest. The victim could feel the [Petitioner's] erect penis near her stomach and vagina. When he let go of her to reach for her pants she hit the floor and ran out the door. . . .

(ECF No. 20.) The victim eventually returned to her apartment, thinking Petitioner had left. (*Id.*) Petitioner, who had in fact remained in the apartment, knocked the victim to the ground and attempted to drag the victim inside, but she was able to escape once again. (*Id.*) Respondents' counsel concluded by arguing that Petitioner has no sponsor, community ties, or employment. (*Id.*)

Petitioner's counsel replied to Respondents' arguments regarding his criminal convictions by emphasizing that the convictions had occurred seven years ago, that he had been released early after four years, and that Petitioner disputes the factual basis for the conviction, which is currently on appeal. (*Id.*) Petitioner's counsel noted Petitioner had not been allowed to introduce evidence concerning the fact that the alleged victim had been the victim of a prior sexual offense. (*Id.*) Petitioner's counsel also argued Petitioner has significant ties to the community because he owns a business, has family members in the United States, and has a partner who is an American citizen who would provide him housing. (*Id.*) Finally, Petitioner's counsel argued Petitioner had been on a path to becoming a medical doctor before his conviction, and has been living in the United States for a significant period of time. (*Id.*)

The IJ ultimately denied bond for the following reasons:

> I believe [Petitioner] was in the United States . . . since roughly 2010 . . . . So he has been here approximately 16 years, so he does have some family in the United States. For purposes of this hearing I don't necessarily disagree that he does or does not have a business. He may well have a business. I have no information about his past hearings as related to his charges in the state court proceedings. The criminal activity, however, in this matter is the Court is giving that significant weight and does have concerns that these are all three very serious offenses under state law and they certainly involved brutalizing — he got convicted, I understand it's not a final conviction if it's on appeal, but a jury of his peers made a determination that he had kidnapped and brutalized another individual, and the Court is not losing sight of that as well, subject to his appellate rights. So I will find his criminal record, although it is a single act, it still is an extensive number of charges, the offenses are very serious and in view of that — how that may weigh into an ultimate determination of whether he should be permitted to remain in the United States, I cannot imagine that that would . . . at least not

> be a significant factor in those considerations as well, without ruling on them for that purpose at the moment, but I'm sure they are going to play a significant role in what would also be a motive to not cooperate or flee from authorities if and when one felt that their ability to ability to remain in the United States may be put in jeopardy. So, for those reasons the Court is going to find that the Department has met its burden showing that there are substantial considerations here that militate against the granting of bond in this case and that would be the Court's order.

(*Id.*)

The IJ's ruling makes clear that he considered the *Guerra* factors, including Petitioner's criminal history, the extensiveness and seriousness of the crimes, his length of residency in the United States, his family ties, and his employment[3] history, and concluded that Petitioner's criminal convictions outweighed any factors militating in his favor. To the extent the IJ did not specifically address record of appearance in court or attempts to flee, no evidence pertaining to these factors was before him.

Under abuse of discretion review, the Court is restricted to determining whether the IJ's decision "'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan*, 2021 WL 308610, at *4. The Court is not persuaded that there was insufficient evidence, as a matter of law, for the immigration court to deny bond. While Petitioner presented some evidence regarding his community ties, it was not clearly erroneous for the IJ to conclude that his conviction for serious and violent offenses, including sexual assault, established dangerousness by clear and convincing evidence.

The IJ's ruling also did not specifically address the recency of the criminal conduct. *See Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) ("[A] conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then. In such cases, denial of bond on the basis of criminal history alone may not be warranted."). However, because Petitioner was only released from criminal custody in 2024, this factor would have weighed strongly *against* Petitioner. "Only 'potentially dispositive testimony and documentary

---

[3] Petitioner's counsel had attempted to submit evidence regarding the existence of Petitioner's business, but the court clerk stated that these documents had not been received. (ECF No. 20.) Nevertheless, the IJ appears to have accepted that this business existed and considered it in his ruling.

evidence' must be specifically addressed." *Perez v. Wolf*, 445 F. Supp. 3d 275, 290 (N.D. Cal. 2020) (quoting *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011)). Where the immigration court fails to mention potentially dispositive evidence, misstates the record, or engages in other behavior which raises an inference that it did not consider important information "a catchall phrase does not suffice, and the decision cannot stand." *Cole*, 659 F.3d at 772. Here, to the contrary, the IJ's ruling extensively discussed the circumstances of the criminal convictions and Petitioner's counsel had specifically emphasized the recency of those convictions at oral argument. Thus, the Court is satisfied the IJ appropriately considered the extensiveness and recency of Petitioner's criminal conduct, and weighed them accordingly.

To the extent Petitioner's counsel challenged the factual basis for the conviction and represented that it was on appeal, under Board of Immigration Appeals ("BIA") precedent, "in ascertaining the effect of a criminal conviction, neither the [BIA] nor the Immigration Judge may go beyond the judicial record to determine the guilt or innocence of a[ noncitizen]." *In Re Mendez-Moralez*, 21 I. & N. Dec. 296, 304 (BIA 1996); *see Perez*, 445 F. Supp. 3d at 287 ("It is thus not constitutional error for an IJ to base their decision on the petitioner's criminal record, so long as the IJ analyzes the recency of the crimes and what (if any) actions the petitioner has taken to rehabilitate themselves.") In any event, the IJ *did* consider the effect of Petitioner's appeal, stating, "I understand it's not a final conviction if it's on appeal, but a jury of his peers made a determination that he had kidnapped and brutalized another individual." (ECF No. 20.)

Therefore, the IJ's decision denying bond was not an abuse of discretion, and there is no legal basis for the Court to find that Respondents failed to comply with its Order.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The Motion to Enforce Judgment (ECF No. 14) is DENIED;

IT IS SO ORDERED.

DATE: August 5, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE